The Hon. John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>OCHE POSTON,<br><br>　　　　Defendant. | NO. CR24-186-JHC<br><br><br>**UNITED STATES'**<br>**SENTENCING MEMORANDUM** |

## I.　　INTRODUCTION

Oche Poston served as distributor in a drug trafficking organization that was responsible for introducing a very large amount of fentanyl into the local community. He worked directly with the leaders in this organization in this distribution activity. During T-III interception, he was identified conducting significant fentanyl transactions with two different redistributors on July 13, 2024. On August 20, 2024, he was identified returning two firearms to a storage locker in which he and Co-Defendant X also stored approximately 70,000 fentanyl pills for distribution. Poston was also trusted to travel out of state to transport drugs on behalf of the organization, and text communications

United States' Sentencing Memorandum - 1
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recovered from Co-Defendant V's phone reflect Poston made a drug run to California in February 2024.

Given Poston's central role in this organization, as well as his possession of firearms in conjunction with drug trafficking, the government recommends the Court impose a custodial sentence of 96 months. The government recognizes its recommendation reflects a 39-month downward variance from the low end of the applicable Guidelines range (of 135 – 168 months), but believes this variance is warranted based on the relevant 18 U.S.C. §3553 sentencing factors, as discussed further below.[1] The government also recommends the Court impose a four-year term of supervision to follow Poston's release from custody, as required by 21 U.S.C. § 841(b)(1)(B).

## II. RELEVANT INVESTIGATIVE FACTS

### A. The Underlying Drug Trafficking Investigation

Poston was identified as a target in an approximately year-long investigation focused on a local drug trafficking organization that was distributing a substantial amount of fentanyl in this District, along with other controlled substances. This organization was also associated with significant violence. Other targets of this investigation have now been charged in several related cases that are all before this Court: CR24-187-JHC, *United States v. Khaliil Ahmed;* CR24-216-JHC, *United States v. Michael Janisch;* and CR24-217-JHC, *United States v. Anteneh Tesfaye.*

This investigation arose from an earlier investigation conducted in the Western District of Pennsylvania (WDPA). The drug trafficking organization targeted by the WDPA spanned several states, including Pennsylvania, Arizona, and Washington. One of the leaders of the Washington arm of that organization was Bryce Hill. Communications

---

[1] The government recognizes that Probation believes Poston was a "minor participant" in the criminal activity, reduced the offense by five levels pursuant to USSG §§ 3B1.2(b) and 2D1.1(a)(5), and calculated his Guidelines range to be 78 – 97 months. As discussed further below, however, the evidence reflects Poston was not, in fact, a "minor participant," and the government objects to the application of these reductions.

United States' Sentencing Memorandum - 2
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

intercepted over Hill's cell phone between December 1, 2022 and January 11, 2023 revealed he was a prolific distributor of fentanyl, cocaine, and methamphetamine. Hill was arrested in Seattle on January 11, 2023 and charged in the WDPA. Shortly thereafter, certain other of Hill's Washington associates were charged here in this District in CR23-025-TL, *United States v. Cierra Ward, et al.* and CR23-009-RSM, *United States v. Abraham Mbugua*.

Based in part on a search of Hill's cell phone, investigators identified that Amir "Lethal" Osman was one of Hill's Washington-based co-conspirators. Federal investigators in this District continued investigating Osman and his co-conspirators. This follow-on investigation involved three periods of authorized T-III interception – first over Osman's Snapchat account, then over a phone used by Muhammed Ceesay, and, finally, over phones used by Ceesay, Lamin Saho, and Ali Kuyateh.[2]

On June 24, 2024, as investigators were preparing to begin the second round of interceptions over Ceesay's phone, Osman was shot and killed outside an apartment in the University District of Seattle known by members of this drug trafficking organization (DTO) as the "The House." Subsequent investigation established that "The House" was a longstanding drug distribution location operated by Ali Kuyateh, Yohannes Wondimagegnehu, and Matthew Robinson that was frequented by other members of the DTO. Physical and electronic surveillance conducted in the weeks following Osman's death showed members of this DTO returned to business as usual – i.e., continued distributing significant amounts of controlled substances – shortly after Osman's death. Indeed, in the two-month period following Osman's death, investigators seized nearly 100,000 fentanyl pills and multiple firearms from DTO members.

Over the course of the investigation, it is estimated that law enforcement seized at least: 200,000 fentanyl pills, 31 kilograms of psilocybin mushroom, four kilograms of

---

[2] Ceesay, Saho, and Kuyateh have also been charged in this case – i.e., they are Poston's co-defendants.

United States' Sentencing Memorandum - 3
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cocaine, 20 kilograms of marijuana, 60 firearms, several Glock "switches," multiple suppressors, and $250,000 in cash drug trafficking proceeds.

**B.      Poston's Criminal Conduct**

   1.   *Poston's Role in the Fentanyl Conspiracy*

The evidence gathered in the year-long investigation reflects Poston played an integral role in this fentanyl trafficking organization for, at minimum, the better part of a year. Poston was trusted by, and worked directly with, multiple members of this organization. *See* Dkt. 200 at ¶¶ 8(a) – (s). He worked closely with Co-Defendant X, who help lead this fentanyl organization following Amir Osman's death. *See id.* at ¶¶ 8(a) – (p). Poston also coordinated drug trafficking activity with Co-Defendant V and Co-Defendant Y.[3] *See id.* And Poston served more than one role in the organization – he participated in various aspects of the drug trafficking activity. Text communications exchanged between Poston and Co-Defendant V in February 2024, reflect Poston was in California to pick up drugs on behalf the organization. *See id.* at ¶ 8(r). As discussed further in the sections below, he also distributed fentanyl in transactions coordinated by Co-Defendant X and utilized a storage unit in which he and Co-Defendant X stored firearms and fentanyl pills for distribution. *See id.* at ¶ 8(a).

   2.   *Poston Conducted Fentanyl Transactions with Co-Defendant X*

On July 13, 2024, during interception over Co-Defendant X's phone (TT30), investigators intercepted calls reflecting Co-Defendant X had arranged fentanyl transactions with two different redistributors, and Poston would be conducting those transactions.[4] The calls reflected Poston first conducted a 3,000-fentanyl pill transaction

---

[3] Intercepted communications, which have been produced to defense in discovery, reflect Poston also knew additional members of this organization who have not yet been charged.

[4] Unless otherwise indicated, the facts recited in this and the following section are reflected in the plea agreement. *See* Dkt. 200 at ¶¶ 8(a) – (p).

United States' Sentencing Memorandum - 4
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with Redistributor A in Lynnwood, Washington.[5] Thereafter, Poston conducted the second, 2,000-fentanyl pill transaction with Redistributor B in Seattle, Washington. Investigators were present on surveillance for the second transaction, interdicted Redistributor B immediately afterwards, and seized the fentanyl pills from him. A photo of these seized pills is included below:[6]



Poston's (and Co-Defendant X's) sale of fentanyl pills to Redistributor B was charged in Count 9 of the Indictment. *See* Dkt. 1. The day after these sales, investigators intercepted communications between Poston and Co-Defendant X in which Poston reported he had left the proceeds from these sales at Co-Defendant X's apartment, after taking $150 for himself.

Although Poston took a cut from this transaction, the evidence gathered in the investigation suggests members of this organization utilized a pay/owe system in which they loaned or fronted drugs and money to each other and settled debts on the back end. Co-defendant Cooper Sherman had ledgers reflecting this pay/owe system in two phones

---

[5] Additional details about these two transactions are contained in Homeland Security Investigations (HSI) Report of Investigation (ROI) No. 101, which was produced to defense in discovery at USA-00001151 – 1154.
[6] The photos of these fentanyl pills were produced to defense in discovery at USA-00002735 – 2739.

United States' Sentencing Memorandum - 5
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that were seized from him on May 22, 2024. Screenshots reflected two of these ledgers are included below:[7]



In these ledgers, some members are identified by their nicknames, which have been confirmed by investigators over the course of the investigation.[8] The ledgers include amounts "paid" or "owed," as well as the terms "boats" (common drug slang for 1,000 fentanyl pills), "bars" (common drug slang for Xanax), "bags" (in this context, presumably bags of narcotics), and "drank" (common drug slang for cough syrup with codeine, also called "lean" or "sizzurp"). Poston is included in one of these ledgers, associated with the notation "165 drank." This suggests Poston either owed, or was to be paid, $165 for cough syrup with codeine. Intercepts also reflect that Co-Defendant X gave Poston a car. In a call on July 10, 2024, Co-Defendant X described testing and delivering a car that Poston would be putting in his name (TT30, Session 2186). Poston told Co-Defendant X: "Like, whatever I can … whatever I can give back, you know what I'm saying, I'll be more than happy to do that 'cause I'm more than thankful that the car's good" (*Id.*).

---

[7] These screenshots were included in the government's memorandum in support of detention for co-defendants Ali Kuyateh, Cooper Sherman, and Jaquan Means, filed in this matter at Dkt. 75.

[8] The key to the right of the screenshots reflects investigators' identification of known members of this organization. The names of uncharged targets have been redacted.

United States' Sentencing Memorandum - 6
United States v. Oche Poston, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.   *Poston and Co-Defendant X Maintained a Storage Locker in Everett Where They Stored Their Firearms and Fentanyl Supply*

Communications subsequently intercepted on August 18, 2024 reflected that Poston and Co-Defendant X maintained a storage locker in Everett, Washington for which both possessed the access code. Communications intercepted two days later, on August 20, 2024, reflected that Poston had just left that storage unit with firearms. He told Co-Defendant X: "Just left storage. 'Bout to put the guns at my mom's." When Co-Defendant X objected to this plan ("Just leave it over there"), Poston turned around and dropped the firearms in the locker. Investigators obtained a warrant to search the locker. Inside, they found a gray and blue bag that contained two firearms – a Glock pistol and a Brownells semiautomatic rifle that was loaded with a double drum magazine and another round in the chamber. Photos of the storage locker after it was opened, the gray and blue bag, and the firearms are included below:



United States' Sentencing Memorandum - 7
United States v. Oche Poston, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



The Brownells rifle was later determined to be stolen.

In the search, investigators also found a black luggage bag (on the left side of the locker in the photo above) packed with Ziploc bags that, in total, contained approximately 70,000 fentanyl pills. Photos of the opened black luggage bag and Ziploc bags of pills are included below:



### III.  RELEVANT PROCEDURAL HISTORY

On October 16, 2024, Poston was indicted on one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1), and one count of Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(b)(1)(B) (Count 8). *See* Dkt. 1. Poston was arrested and appeared on the charges on October 30, 2024. *See* Dkt. 49. A detention hearing was held on November 1, 2024, at which the parties agreed Poston should be released on bond. *See* Dkt. 71. The presiding United States Magistrate Judge entered an appearance bond and

United States' Sentencing Memorandum - 8
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

scheduled a bond status hearing for November 22, 2024. *See* Dkts. 71 & 72. At the status hearing, the parties agreed Poston's performance on supervision was satisfactory and no further status hearings were necessary. *See* Dkt. 118.

On June 20, 2025, Poston entered a plea of guilty to a lesser-included offense to that charged in Count 1 of the Indictment, Conspiracy to Distribute Controlled Substances. *See* Dkts. 198 – 201. Specifically, Poston entered a plea to Conspiracy at the B-level, rather than at the A-level as charged. *See* Dkt. 200 (Plea Agreement) at ¶ 1. At sentencing, the government will move to dismiss Count 9 of the Indictment, Distribution of a Controlled Substance. *See* Dkt. 200 at ¶ 14. Pursuant to the plea agreement, the government has agreed to recommend a term of imprisonment that is no more than the low end of the applicable Guidelines sentence as determined by the Court. *See id.* at ¶ 11. Defense has made no agreement as to the recommended sentence and is free to recommend any sentence permitted by law. *See id.*

## IV.   SENTENCING GUIDELINES CALCULATIONS

As reflected in the plea agreement, the parties have agreed the following Guidelines provisions apply to this case:

- Base offense level of 34 pursuant to USSG §§ 2D1.1(a)(5) and (c)(3) because the relevant conduct involved at least 4 kilograms but less than 12 kilograms of fentanyl;[9] and
- Increase of 2 levels pursuant to USSG § 2D1.1(b)(1) because Poston possessed a dangerous weapon – i.e., a firearm.

*See id.* at ¶ 9.

---

[9] In the Presentence Report (PSR), Probation also calculated a base offense level of 34 but did so based on Converted Drug Weight. As reflected in the plea agreement, the parties' agreed base offense level is based on the weight of the fentanyl) involved in the July 13, 2024 transaction with Redistributor B and found in the search of Poston and Co-Defendant X's storage locker on August 20, 2024 (a total of approximately 7.3 kilograms). *See* Dkt. 200 at ¶¶ 8(j), 8(o) and 9(a). When reviewing the draft PSR, counsel for the government did not identify that Probation was utilizing Converted Drug Weight and not the weight of this fentanyl.

United States' Sentencing Memorandum - 9
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The government disagrees with Probation's calculation of the applicable Guidelines range. Specifically, the government objects to Probation's determination that Poston was a "minor participant" in the criminal activity entitled to a two-level reduction pursuant to USSG § 3B1.2(b) and an additional three-level reduction pursuant to USSG § 2D1.1(a)(5).[10] In assessing whether a defendant is eligible for a "minor participant" adjustment, courts must consider five factors: 1) the degree to which the defendant understood the scope and structure of the criminal activity; 2) the degree to which the defendant participated in planning or organizing the criminal activity; 3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; 4) the nature and extent of the defendant's participation in the commission of the criminal activity; and 5) the degree to which the defendant stood to benefit from the criminal activity. *See* Application Note 3(C) to USSG §3B1.2; *see also United States v. Rodriguez,* 44 F.4th 1229, 1233 (9th Cir. 2022).

In the government's view, an assessment of these factors reflects Poston was not a "minor participant."[11] With respect to the nature and extent of his participation in the criminal activity, Poston was an integral part of this drug trafficking organization. He knew and directly engaged in drug trafficking activities with several of its members. In a single day, on July 13, 2024, he worked with Co-Defendant X to conduct two significant fentanyl transactions, totaling 5,000 pills, with two different redistributors. He also utilized, with Co-Defendant X, a storage locker in Everett, in which they kept firearms and a supply of approximately 70,000 fentanyl pills for distribution. On August 20, 2024, the day that locker was searched by investigators, Poston himself transported and

---

[10] Probation applied these reductions *after* the parties had reviewed and tendered their comments and objections to the draft PSR. The government, therefore, did not have the opportunity to object to these reductions before the PSR was finalized.

[11] The government notes it has agreed to a "minor participant" reduction for one of Poston's co-defendants, Jaquan Means. *See* Dkt. 182 (Plea Agreement) at ¶ 9(b). In the government's view, Means truly is eligible for this adjustment, given his very limited involvement in the organization – namely, introducing two different fentanyl redistributors to co-defendant Muhamed Ceesay on two different dates). *See id.* at 8(a) – (n).

United States' Sentencing Memorandum - 10
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deposited in the locker the firearms that were later found there. In intercepted communications the next day, Poston and Co-Defendant X discussed moving the luggage that contained the fentanyl pills to a different location, leaving no doubt that Poston was aware the pills had been stored there. In February 2024, Poston also traveled out of state to source drugs for the organization, and the other members trusted him to undertake this task and to independently exercise the organizational skills it required – including, presumably, meeting with the supplier.

Given his intimate involvement in this organization, and the various ways he participated in the drug trafficking activity, Poston was well-positioned to understand – and no doubt *did* understand – both the scope and structure of the organization. He also stood to profit from the fentanyl trafficking, whether it was through a share of the proceeds, periodic cash payments, the gift of vehicle, or other forms of remuneration. For these reasons, the government believes the Court should decline to apply a "minor participant" adjustment.

Instead, the government believes the offense level is appropriately calculated as follows:

| Item | Guideline | Offense Level/Adjustment |
|---|---|---|
| Base Offense Level<br><br>*(7.3 kg of fentanyl, reflecting the fentanyl involved in the July 13, 2024 transaction with Redistributor B and the fentanyl found in the storage locker on August 20, 2024)* | 2D1.1(a)(5) / 2D1.1(c)(3) | 34 |
| Possession of Firearm<br><br>*(firearms Poston possessed and transported to the storage locker on August 20, 2024)* | 2D1.1(b)(1) | +2 |
| AOR | 3E1.1 | -3 |

United States' Sentencing Memorandum - 11
United States v. Oche Poston, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| | | ------ |
| **Total Offense Level** | | 33 |

With a total offense level of 33, and a Criminal History Category of I, Poston's Guidelines range is 135 – 168 months.[12]

## V. FACTORS SUPPORTING SENTENCING RECOMMENDATION

The government recommends the Court sentence Poston to 96 months of confinement, followed by a 4-year term of supervised release. While this reflects a significant downward variance from the low end of the Guidelines range (in the government's calculation), the government believes a sentence of this length is sufficient but no greater than necessary and is appropriate in light of "the nature and circumstances of the offense," the defendant's "history and characteristics," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to further criminal conduct," "to protect the public from further crimes of the defendant[,]" and to "avoid unwarranted sentencing disparities[.]" 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), and (a)(6).

### A. The Nature and Circumstances and Seriousness of the Offense

Poston assisted with distributing significant quantities of fentanyl – evidenced by the 5,000 pills he distributed in a single day on July 13, 2024 and the 70,000 pills that were found in the storage locker he and Co-Defendant X used. As the Court well knows, fentanyl has had a devasting impact on our community. In Snohomish County, where Poston conducted the first fentanyl transaction on July 13, 134 of the 183 overdose deaths thus far

---

[12] Given the parties' respective sentencing recommendations, all of which reflect significant downward variances from the low end of this Guidelines range, the government suspects the Guidelines may not drive the actual sentence the Court imposes.

United States' Sentencing Memorandum - 12
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in 2025 have involved fentanyl (approximately 73%).[13] In King County, where Poston conducted the second transaction that day, fentanyl has been involved in 531 of the 694 confirmed (or probable) overdose deaths thus far in 2025 (approximately 76%).[14] These statistics reflect the uniquely deadly nature of fentanyl and the number of lives lost to it just this year in these two counties.

Poston's offense is aggravated by his possessed firearms in connection with drug trafficking. As described above, Poston personally transported two firearms and deposited them in the storage locker where they were subsequently found. One of these firearms was a semiautomatic rifle loaded with a double-drum magazine and another round in the chamber, which had been reported stolen. Poston's transport of these firearms suggests they may have accompanied him and/or Co-Defendant X when they were distributing controlled substances. Regardless, Poston's possession of firearms in conjunction with drug trafficking only increases the risk those firearms would be used in a volatile context.

Also concerning, from the government's perspective, is the fact that law enforcement's seizure of Poston and Co-Defendant X's firearms and fentanyl supply from the storage locker on August 20, 2024 did not stop Poston from continuing to engage in drug trafficking. Communications intercepted in September 2024 reflect that Poston continued to distribute drugs with Co-Defendant X and Co-Defendant Y. *See* Dkt. 200 at ¶ 8(s).

**B.    Poston's History and Characteristics**

The government recognizes that Poston had a difficult upbringing. He was raised

---

[13] *See* Snohomish County Medical Examiner's Office Drug Overdose Dashboard at https://snohomishcountywa.gov/5655/OD, last visited on September 15, 2025.

[14] *See* King County Department of Public Health's Overdose Data Dashboard at https://kingcounty.gov/en/dept/dph/health-safety/safety-injury-prevention/overdose-prevention-response/data-dashboards, last visited on September 15, 2025.

United States' Sentencing Memorandum - 13
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by a young mother; his father was incarcerated through much of his childhood; and he struggled in school due to ADHD, which led to his social isolation. *See* Presentence Report (PSR) at ¶¶ 61 – 82. He was also exposed to substance use at home. *See* PSR at ¶ 70. Despite these challenges, he managed to graduate from high school and complete a year of community college. *See id.* at ¶ 89. He does have a history of legitimate employment, including while on pretrial supervision in this matter. *See id.* at ¶¶ 92 – 93.

Poston's criminal history is minimal and consists of a 2018 conviction for Driving Under the Influence, for which he spent approximately 33 days in custody, and a 2017 conviction for Driving with License Suspended, Third Degree, for which he received a 90-day suspended sentence.

The difficulties that Poston has faced do not excuse his criminal conduct, but they do – in the government's view – provide a basis for the significant variance below the applicable Guidelines range the government requests, as does his minimal criminal history and satisfactory performance on pretrial supervision.

C. **The Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from Further Crimes of the Defendant**

A significant sentence is warranted to provide just punishment and to promote Poston's respect for the law. Poston was part of a larger drug trafficking organization that distributed significant amounts of fentanyl into the community. The government's recommended sentence of 96 months should deter him from future criminal conduct; it should send a deterrent message to others who may be thinking about distributing fentanyl in our community; and it will serve to protect the public by preventing Poston from committing additional crimes during that term of imprisonment.

D. **The Need to Avoid Unwanted Sentencing Disparity**

Poston is the fifth defendant to be sentenced in the four related cases arising from this investigation, all of which are before this Court. Of the previous defendants to be sentenced, three possessed firearms in conjunction with drug trafficking: Khaliil Ahmed

United States' Sentencing Memorandum - 14
*United States v. Oche Poston*, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(CR24-187), Yohannes Wondimagegnehu (CR24-186), and Dominique Sanders (CR24-187). The Court has sentenced each of these defendants to 72 months. Ahmed's case is distinguishable, however, as he was not charged with substantive drug trafficking offense – only firearms offenses. Wondimagegnehu's case is also distinguishable in that – although he was charged with a drug trafficking offense and distributed various controlled substances – he did not distribute fentanyl. Sanders is perhaps the most directly comparative defendant because he, like Poston, distributed fentanyl and possessed firearms in conjunction with that activity. Sanders, however, was a *redistributor*, who purchased fentanyl from the co-defendants with whom Poston worked directly – i.e., Co-Defendants X and Y. Sanders, in other words, occupied a distinctly lower rung in the organization than did Poston. For this reason, the government believes a sentence greater than 72 months would avoid creating unwarranted sentencing disparity between the defendants in these related cases.

## VI.    CONCLUSION

For the reasons discussed above, the government recommends the Court sentence Poston to 96 months of imprisonment followed by four years of supervised release, with the standard and special conditions recommended by Probation.

DATED this 15th day of September, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

 s/ Michelle Jensen
MICHELLE JENSEN
JOSEPH C. SILVIO
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970
Michelle.Jensen@usdoj.gov

United States' Sentencing Memorandum - 15
United States v. Oche Poston, CR24-186-JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970